UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CURTIS DANIEL PIERSON,

    Plaintiff,

v.     Case No. 8:20-cv-1600-SPF

KILOLO KIJAKAZI,[1]
Acting Commissioner of the
Social Security Administration,

    Defendant.
_____/

## ORDER

Plaintiff seeks judicial review of the denial of his claims for period of disability and disability insurance benefits ("DIB"). As the Administrative Law Judge's ("ALJ") decision was not based on substantial evidence, the Commissioner's decision is reversed.

    **I.**    **Procedural Background**

Plaintiff applied for period of disability and DIB on May 10, 2017 (Tr. 186-187). The Commissioner denied Plaintiff's claims both initially and upon reconsideration (Tr.69-81). Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 32-56). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 17-27). Subsequently, Plaintiff requested review from the Appeals Council, which the

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021 and is substituted as Defendant in this suit pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

Appeals Council denied (Tr. 1-6). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

## II.     Factual Background and the ALJ's Decision

Plaintiff was born on April 14, 1990 and claims disability beginning June 11, 2016 (Tr. 34). Plaintiff has a ninth-grade education (Tr. 52). His past relevant work experience includes jobs as a pin chaser mechanic at a bowling alley (Tr. 38; 200). Plaintiff alleges disability due to ADHD, anxiety, seizures, depression, radicular pain, and myalgia (Tr. 69).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through December 31, 2021 and had not engaged in substantial gainful activity since June 11, 2016, the alleged onset date (Tr. 19). After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: seizures and anxiety (Tr. 19). Notwithstanding these impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 20). The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform a full range of work at all exertional levels with these limitations:

> He must avoid climbing ladders, ropes, and scaffolds; he should avoid the use of hazardous industrial machinery and unprotected heights; he can do detailed work with no more than occasional interaction with the public and coworkers.

(R. 22).

In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of the alleged symptoms were not entirely consistent with the medical evidence and other evidence in the record (Tr. 22). Considering Plaintiff's impairments and the VE's assessment, the ALJ determined Plaintiff could not perform his past relevant work (Tr. 26). Rather, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform (*Id.*). Namely, the ALJ concluded that based on Plaintiff's age, education, work experience, and RFC, in conjunction with the Medical-Vocational Guidelines and the testimony of the VE, Plaintiff can perform the requirements of the following jobs: Office Helper (DOT 239.567-010), Photocopy Machine Operator (DOT 207.685-014), and Cleaner/Housekeeper (DOT 323.687-014) (Tr. 26-27). The ALJ then found Plaintiff not disabled from June 11, 2016, through the date of the decision (Tr. 27).

### III.    Legal Standard

To be entitled to benefits, a claimant must be disabled, meaning she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities,

which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration ("SSA"), to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 404.1520. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits her ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform her past relevant work. If the claimant cannot perform the tasks required of her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of her age, education, and work experience. 20 C.F.R. § 404.1520(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 404.1520(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305

U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. Review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

IV.   Analysis

Plaintiff raises four issues on appeal – whether the ALJ constructively reopened Plaintiff's prior application for benefits and therefore applied the incorrect standard for evaluating medical opinions; whether the ALJ properly evaluated the medical opinion evidence; whether the ALJ properly evaluated Plaintiff's subjective statements; and whether the ALJ properly posed a hypothetical to the VE that accurately reflected his mental impairments. Upon a thorough review of the record and the parties' submissions, the Court finds that Plaintiff's second assertion of error warrants reversal and remand for

further proceedings. However, the Court will first address whether the ALJ constructively reopened Plaintiff's prior application for benefits and therefore applied the incorrect standard for evaluating medical opinions.

### A. Reopening of prior application

Plaintiff's first claim of error arises from the fact that the application for benefits presently at issue was filed less than one year after the administrative denial of a prior claim for disability benefits he filed on June 14, 2016. The SSA denied the prior claim on October 11, 2016 (Tr. 98-101). Rather than appealing the administrative denial, on May 10, 2017, Plaintiff filed a second application for benefits (Tr. 186-187).[2] Now, Plaintiff claims the ALJ erred by failing to acknowledge his prior disability claim. Simultaneously, Plaintiff asserts the ALJ constructively reopened his first application by considering Plaintiff's disability on the merits with regard to the period of time covered by the prior application, and erred by applying the new regulations applicable to disability cases filed after March 27, 2017

While an ALJ's decision can be reopened for any reason within twelve months of the notice of the initial decision, as a general rule federal courts lack jurisdiction to review an administrative decision not to reopen a previous claim for benefits. *See Califano v. Sanders*, 430 U.S. 99, 107-09 (1977); 20 C.F.R. §§ 404.988(a), 416.1488(a). "[A] decision refusing to reopen an earlier application is considered an interim decision not reviewable

---

[2] Plaintiff's first application for benefits, filed on June 14, 2016, alleged a disability onset date of June 1, 2016. Plaintiff's second application for benefits, filed on May 10, 2017, alleges a disability onset date of June 11, 2016.

6

under § 405(g)." *Cash v. Barnhart*, 327 F.3d 1252, 1256 (11th Cir. 2003) (citing *Loudermilk v. Barnhart*, 290 F.3d 1265, 1268 (11th Cir. 2002)); *see Byam v. Barnhart*, 336 F.3d 172, 180 (2d Cir. 2003) ("The Commissioner's decision not to reopen a prior determination is not a final decision for the purposes of § 405(g), and thus is generally unreviewable even if there was a hearing in the case.") (citation omitted). Thus, it is clear that the federal courts are without jurisdiction to review the Commissioner's refusal to reopen a prior application absent some constitutional challenge. *Califano*, 430 U.S. at 107-09. Although Plaintiff does not specifically allege a violation of his Constitutional rights, he suggests that "[g]iven [his] significant mental impairments and lack of counsel" during his first application for benefits, the ALJ should have reopened his prior disability claim (Doc. 28, p.21). A claimant suffering from mental illness raises a colorable constitutional claim when he asserts that: 1) he suffers from a medically-documented mental illness which serves as the basis for his disability claim; 2) on his first application he was without the assistance of counsel or other suitable representation; and 3) he cannot assert a new claim for benefits because he now lacks insured status. *Gardner v. Comm'r of Soc. Sec.*, No. 2:20-cv-331-MRM, 2021 WL 3674305 (M.D. Fla. Aug. 19, 2021) (citing *Elchediak v. Heckler*, 750 F.2d 892, 895 (11th Cir. 1985).[3] Plaintiff cannot satisfy the third prong of the *Elchediak* test because, as the ALJ noted in his decision, Plaintiff met the insured status through December 31, 2021 (Tr. 19). As in *Gardner*, Plaintiff still has an opportunity to seek and

---

[3] If a plaintiff satisfies each of the three *Elchediak* prongs, the Court may remand his case to the Commissioner with instructions to determine whether his mental illness prevented him from understanding and pursuing his administrative remedies following the denial of his first applications for benefits. *Gardner*, 2021 WL 3674305, at *8.

7

be awarded benefits because there has been no adjudication on whether Plaintiff has been under a disability from October 12, 2016, the day after the denial of his prior disability claim, through the date last insured. *Id.* Thus, the ALJ did not err by failing to acknowledge Plaintiff's prior adjudicated claim.

To the extent that Plaintiff argues that the ALJ constructively reopened the prior disability determination, the Court finds Plaintiff's argument unpersuasive. A previous administrative decision is deemed "reopened" if it is "reconsidered on the merits to any extent and at any administrative level." *Cherry v. Heckler*, 760 F.2d 1186, 1189 (11th Cir. 1985) (quoting *McGowan v. Harris*, 666 F.2d 60, 65 (4th Cir. 1981)). Here, the ALJ discussed various treatment records pre-dating the prior disability determination issued on October 11, 2016. The ALJ noted that Plaintiff was "told to stop using marijuana" in June 2016; that medical records from June 2016 indicated Plaintiff had a history of ADHD (Tr. 20, 23); and that an exam in June 2016 showed Plaintiff was capable of maintaining his personal care and was cooperative (Tr. 21). The ALJ's references to these records, however, did not equate to a reconsideration of the prior decision on the merits. Rather, the ALJ's decision shows that he analyzed Plaintiff's medical history from the alleged June 11, 2016 onset date through the date of the decision. *See generally Passopulos v. Sullivan*, 976 F.2d 642, 646 (11th Cir. 1992) (finding that "an ALJ does not reopen a prior final decision when the ALJ evaluates evidence presented in support of the original application solely to make a reasoned determination of its res judicata effect on the second application"); *Brown v. Sullivan*, 921 F.2d 1233,1237 (11th Cir. 1991) ("Although the Appeals Council and the ALJ commented on [the plaintiff's] condition prior to March 1,

1981 while considering the second application, they did so while considering new proffered evidence, and these statements did not amount to a reconsideration of the merits of the denied first application.").

Plaintiff has failed to show that the ALJ constructively reopened his previous administrative decision.  In light of this finding, it is unnecessary to address Plaintiff's related assertion that the ALJ's failure to reopen prejudiced him because the ALJ applied the revised standards for weighing medical opinions set forth in the regulations applicable to claims filed after March 27, 2017.

### B.  Medical opinions

Plaintiff complains that the ALJ failed to properly evaluate the medical opinion evidence and, as a result, failed to properly determine his mental RFC.  The RFC is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite her impairments. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Washington v. Comm'r Soc. Sec.*, 503 F. App'x 881, 882-83 (11th Cir. Jan. 15, 2013) (in determining a claimant's RFC, the ALJ "considers all the evidence in the record.").  As part of the process of determining a claimant's RFC, an ALJ must take into consideration the medical opinions of treating, examining, and non-examining treating sources.  20 C.F.R. § 404.1545.  Because Plaintiff filed his application on May 10, 2017, the revised SSA regulations describing how medical evidence is categorized, considered, and articulated when an RFC is assessed apply here.  *See* 20 C.F.R. §§ 404.1513(a), 404.1520c (effective on March 27, 2017).  Under these revised regulations, the ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any

9

medical opinion(s) or prior administrative finding(s) including those from the claimant's medical sources." 20 C.F.R. § 404.1520c(a). Instead, an ALJ must use the following factors when considering medical opinions or administrative findings: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." § 404.1520c(c)(1)-(5). The first two factors are the most important: "Under the new rule, the SSA will consider the persuasiveness of all medical opinions and evaluate them primarily on the basis of supportability and consistency." *Mackey v. Saul*, 2020 WL 376995, at *4, n. 2 (D.S.C. Jan. 6, 2020), citing 20 C.F.R. § 404.1520c(a),(c)(1)-(2) (while there are several factors ALJ must consider, "[t]he most important factors ... are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)."). In fact, while the ALJ must explain how he or she considered the supportability and consistency factors, the ALJ need not explain how he or she considered the other three factors.[4] 20 C.F.R. § 404.1520c(b)(2).

"Supportability" refers to the principle that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). "Consistency" refers to the principle that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from

---

[4] The exception is when the record contains differing but equally persuasive medical opinions or prior administrative medical findings about the same issue. *See* 20 C.F.R. § 404.1520c(b)(3).

10

other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2). Put differently, the ALJ must analyze whether the medical source's opinion is (1) supported by the source's own records, and (2) consistent with the other evidence of record. *See Cook v. Comm'r of Soc. Sec.*, No. 6:20-cv-1197-RBD-DCI, 2021 WL 1565832, at *3 (M.D. Fla. Apr. 6, 2021), *report and recommendation adopted*, 2021 WL 1565162 (M.D. Fla. Apr. 21, 2021).

In addition, when a medical source provides multiple opinions, the ALJ need not articulate how he or she evaluated each medical opinion individually. § 404.1520c(b)(1). Instead, the ALJ must "articulate how [he or she] considered the medical opinions ... from that medical source together in a single analysis using the factors listed [above], as appropriate." *Id.*

### 1. Aimee Tegtmeier, D.O.

Plaintiff's treating family practice physician, Aimee Tegtmeier, D.O. completed a Seizure Impairment Questionnaire and a Psychiatric / Psychological Questionnaire on August 24, 2018 (Tr. 355-361, 364-368). Dr. Tegtmeier diagnosed ADHD, social anxiety disorder, and major depressive disorder (Tr. 364). She opined that as a result of these diagnoses Plaintiff is moderate-to-markedly and markedly limited in his ability to perform mental activities in a competitive work environment on a sustained and ongoing basis (8 hours a day, 5 days a week) in the areas of sustained concentration and persistence, social interaction, and adaptation (Tr. 367-68). Dr. Tegtmeier opined Plaintiff is incapable of even "low stress" work due to his depression and anxiety and past traumatic life events

(Tr. 359); would need to miss work two to three times a month due to his impairments (Tr. 367); and would experience episodes of decompensation or deterioration in a work setting that would cause him to withdraw or to experience an exacerbation of his symptoms (Tr. 366).

In finding Dr. Tegtmeier's opinion "not particularly persuasive because it is not supported by the record" (Tr. 24), the ALJ stated:

> The extreme limitations are not supported by the record or even the doctor's own treatment notes. For example, the doctor finds the claimant has a seizure disorder, but also notes he is not having any seizures. The doctor notes the claimant seldom has any symptoms that interfere with his attention and concentration, but then states that the claimant's depression, anxiety and past traumatic life events render him incapable of even a low stress job. The doctor also states the claimant will be off work for one to three days per month, but then states this is due to the claimant's social anxiety. It seems Dr. Tegtmeier does not think his seizures are problematic, but then opines the claimant's mental impairments are the problem. This is not persuasive, and will be discussed more fully later in this decision.

(Tr. 24). Plaintiff complains that despite stating he would "discuss[] [Dr. Tegtmeier's] opinions more fully later in this decision," the ALJ did not do so (Tr. 24). The Commissioner notes that when the ALJ discussed Plaintiff's mental impairments later in his decision he shed light on his reasons for finding Dr. Tegtmeier's opinions less persuasive (Tr. 24-25). Specifically, the ALJ stated:

> Turning to claimant's mental impairments, the claimant has been diagnosed with anxiety. Upon examination, however, he was typically found to have normal mood and affect, an intact memory, intact attention and concentration, be fully oriented, be cooperative, have good eye contact and have normal speech with no thought problems, suicidal ideations and average intelligence. (See Exhibit 5F at page 3; Exhibit 12F). Sometimes he was found to have decreased concentration, but that seem to be before his ADHD medication was reinstated. He was often specifically found not to be anxious. (See Exhibit 12F at pages 23 and 30). He seems to have had some anxiety medication, but discontinued it because at the hearing he

12

>stated he was not taking any anxiety medication. He alleged he could not afford it, but the record shows he specifically denied having anxiety. (See Exhibit 14F at pages 10 and 15).[5]

(Tr. 24-25). However, the ALJ still did not satisfy the regulation's requirement that he address both the supportability and the consistency of Dr. Tegtmeier's opinion, and his RFC determination is not supported by substantial evidence.

With respect to the supportability factor, in discrediting Dr. Tegtmeier's opinions regarding Plaintiff's anxiety-related limitations, the ALJ focuses on his largely unremarkable mental status examinations and dismissed his anxiety-related symptoms (Tr. 24-25). While Dr. Tegtmeier's treatment records show that once Plaintiff started taking medication to control his seizures, he became seizure-free (Tr. 700, 777), the same is not true for Plaintiff's anxiety which remained largely unchanged throughout the relevant time frame. On the Questionnaire, Dr. Tegtmeier identified signs and symptoms that support her diagnoses and her assessment of Plaintiff's limitations: depressed mood, persistent or generalized anxiety, feelings of guilt or worthlessness, difficulty thinking or concentrating, decreased energy, insomnia, and social withdrawal or isolation (Tr. 365). Dr. Tegtmeier's office visit notes clearly and consistently document these subjective complaints indicative of extreme anxiety, and also document Dr. Tegtmeier's difficulty finding medications that reduced these symptoms without causing detrimental side effects.[6] Throughout her treating relationship with Plaintiff, Dr. Tegtmeier noted

---

[5] Exhibits 5F and 12F are medical records from Sparrow Medical Group, where Plaintiff treated with Dr. Tegtmeier.

[6] On the Psychiatry/ Psychological Questionnaire, Dr. Tegtmeier summarized the problems Plaintiff has had with various psychiatric medications: Adderall, palpitations;

Plaintiff's relentless social anxiety and insomnia, and difficulty finding medications that were effective, covered by insurance, and did not cause unwanted side effects (Tr. 633-34, 640, 647-48, 654-55, 661, 674, 680, 700, 707-08, 753). Plaintiff consistently reported that his anxiety prevented him from leaving the house except when accompanied by his roommate or a family member (Tr. 675, 707). The treatment record reflects that Plaintiff's roommate attended some appointments with him to provide support and to assist with collateral history (Tr. 322, 345).

Dr. Tegtmeier's reliance on Plaintiff's symptomatology and her observations is not atypical in the evaluation of mental illness. "The practice of psychology is necessarily dependent, at least in part, on patient subjective statements. A psychological opinion need not be based on solely objective tests; those findings may rest either on observed signs and symptoms or on psychological tests." *Brancazio v. Comm'r of Soc. Sec.,* No. 2:19-cv-694-FtM-MAP, 2020 WL 3888199, at *5 (M.D. Fla. 2020) (quoting *Thomas v. Barnhart*, 147 Fed. Appx. 755, 759 (10th Cir. 2005)). Additionally, mental disorders are characterized by unpredictable fluctuation of their symptoms, and even a highly unstable patient will have good days or possibly good months. *Simon v. Comm'r of Soc. Sec.*, 7 F.4th 1094, 1106 (11th Cir. Aug. 12, 2021). "For those who suffer from [chronic diseases], a 'snapshot of any single moment says little about [a person's] overall condition' and an ALJ who relies on such snapshots to discredit the remainder of a [physician's] findings demonstrates a

---

Strattera, fatigue; Ritalin, "zombie;" Lexapro 20mg, shakiness and tremors; Zoloft, unspecified side effects; Prozac, dizzy/lightheaded/tremors/agitation (Tr. 364).

'fundamental, but regrettably all-to-common, misunderstanding of mental illness.'" *Id*. (quoting *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011)).

In addition to focusing on Plaintiff's "normal" mental status exams and failing to acknowledge Plaintiff's symptoms, the ALJ also mis-stated Dr. Tegtmeier's opinions and records. The ALJ stated that Dr. Tegtmeier's "note[d] the claimant seldom has any symptoms that interfere with his attention and concentration" (Tr. 24). On the Questionnaire, however, Dr. Tegtmeier indicated that Plaintiff's seizure-related symptoms "seldom" interfere with his attention and concentration, but his ADHD-related symptoms "frequently" interfere with his attention and concentration (Tr. 358). *See also* Tr. 365 ("difficulty thinking or concentrating"); Tr. 367 (indicating mild, moderate, moderate-to-marked, and marked limitations in concentration and persistence). The ALJ also misstated that Plaintiff's "decreased concentration … seems to be before his ADHD medication was reinstated" (Tr. 25, 818, 853). Instead, as discussed, the medical records document Dr. Tegtmeier's inability to find medications that controlled Plaintiff's symptoms without causing unwanted side effects. *See* Tr. 633-34, 640, 647-48, 654-55, 661, 674, 680, 700, 707-08, 753. Similarly, the ALJ dismissed Plaintiff's hearing testimony that he cannot afford his psychiatric medication and cited to a single treatment note as proof that "the record shows he specifically denied having anxiety." *See* Tr. 25 (ALJ stated Plaintiff "seems to have had some anxiety medication, but discontinued it because at the hearing he stated he was not taking any anxiety medication"); 42-43 (hearing testimony), Tr. 863 (office note dated July 25, 2018). For these reasons, the Court finds the ALJ did

15

not properly evaluate the "supportability" factor when he found Dr. Tegtmeier's opinions "not particularly persuasive."

The other key factor ALJs must consider under the new regulations is consistency. In order to satisfy the consistency factor:

> 'It is not enough to merely point to positive or neutral observations that create, at most, a trivial and indirect tension with the treating phyisican's opinion by proving no more than that the claimant's impairments are not all-encompassing.' *Schink v. Comm'r of Soc. Sec.,* 935 F.3d 1245, 1263 (11th Cir. 2019). Moreover, particularly when ... the claimant suffers from mental or emotional disorders, in 'evaluating a claimant's medical records, an ALJ must take into account the fundamental difference between the relaxed, controlled settling of a medical clinic and the more stressful environment of a workplace.' *Simon v. Comm'r of Soc. Sec.*, 7 F.4th 1094, 1107 (11th Cir. 2021).

*Mayfield v. Comm'r of Soc. Sec.*, No. 7:20-cv-1040-ACA, 2021 WL 5300925, \*6 (N.D. Ala. Nov. 15, 2021). The ALJ did not address the consistency of Dr. Tegtmeier's opinion (Tr. 24).[7] Accordingly, the Court cannot find that the ALJ properly considered the persuasiveness of Dr. Tegtmeier's opinion as required by the revised regulations. *See Brown v. Comm'r of Soc. Sec.*, No. 6:20-cv-840-GLK, 2021 WL 2917562, \*4 (M.D. Fla. July 12, 2021) ("To the extent that Dr. Minville and Dr. White opined on Claimant's cognitive functional limitations, the ALJ must consider those opinions, assess their persuasiveness,

---

[7] Had the ALJ discussed whether Dr. Tegtmeier's opinions were consistent with the opinions from other medical sources, it seems he would have been hard-pressed not to find at least some consistency. The medical source opinions from independent examiner Leonard McCullough and prior administrative medical findings of state mental health experts Ashok Kaul, M.D. and Joe DeLoach. Ph.D. indicate that Plaintiff is limited in his ability to respond appropriately and adapt to changes in the workplace (McCullough); restricted to simple work (McCullough, Kaul, and DeLoach); restricted to low stress social demands (Kaul); and limited to minimal contact with coworkers and the public (DeLoach). Interestingly, when the ALJ discussed the opinions of McCullough, DeLoach, and Kaul, he concluded all were "not particularly persuasive" (Tr. 25).

16

and *explain* his decision, particularly with respect to supportability and consistency.") (citing 20 C.F.R. 404.1520c(b)(2)). On remand, the ALJ is directed to explain his consideration of the persuasiveness of Dr. Tegtmeier's opinions, focusing on the factors of supportability and consistency as required by the revised regulations

### 2. Leonard McCulloch, M.A.

Similarly, the ALJ erred in considering the persuasiveness of the independent mental health examiner, Leonard McCulloch, M.A. McCullough examined Plaintiff twice (Tr. 329-334, 347-352) and concluded Plaintiff's "ability to respond appropriately to others, including supervisor and co-workers, and to adapt to changes in a work setting are … severely impaired by psychopathology" (Tr. 333, 351). He also opined that Plaintiff's "ability to perform work related activities, despite alleged impairments, in a reliable, consistent, and persistent manner is … severely impaired by psychopathology" (Tr. 333-334, 352-52). The ALJ found McCullough's opinions "not particularly persuasive" because "they seem to be based primarily on what the claimant said were his symptoms and limitations" and because "[t]hey are inconsistent with the record, including the examiner's own findings" (Tr. 25). The ALJ, however, neglected to cite to any particular conflicting record evidence. Moreover, as previously stated, "[t]he practice of psychology is necessarily dependent, at least in part, on patient subjective statements." *Brancazio, supra,* 2020 WL 3888199, at *5 (quoting *Thomas v. Barnhart*, 147 Fed. Appx. at 759). Thus, McCullouch's reliance on Plaintiff's symptoms and limitations, rather than on objective tests, may not have been misplaced. Irrespective, the ALJ's conclusory statements with regard to the persuasiveness of McCulloch's opinions do not sufficiently address the

17

supportability or consistency factors. Thus, remand is appropriate. On remand, the ALJ is directed to explain his consideration of the persuasiveness of McCullough's opinions, focusing on the factors of supportability and consistency as required by the revised regulations.[8]

### C. Remaining issues

The remaining issues presented by Plaintiff need not be addressed because the case is being remanded to the Commissioner for further consideration. *See, e.g., Demench v. Sec'y of Dep't of Health & Human Servs.*, 913 F.2d 882, 884 (11th Cir. 1990) (declining to address plaintiff's remaining arguments due to conclusions reached in remanding the case); *Jackson v. Bowen*, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (stating that it is unnecessary to review other issues raised on appeal where remand is required and such issues will likely be reconsidered in the subsequent proceedings).

### IV.

Accordingly, for the foregoing reasons, it is hereby **ORDERED**:

1. The Commissioner's decision is reversed and remanded; and

---

[8] Plaintiff asserts that the ALJ's erroneous analysis of the persuasiveness of the medical source opinions resulted in the ALJ's failure to properly evaluate his mental RFC. Because the ALJ considers the medical opinions of treating, examining, and non-examining treating sources in determining a claimant's RFC, the Court directs that on remand the ALJ should reconsider the Plaintiff's RFC. 20 C.F.R. § 404.1545. Of course, the responsibility of assessing RFC rests with the ALJ, and the ALJ's RFC assessment need not match or mirror the findings or opinions of any particular medical source. *Freyhagen v. Comm'r of Soc. Sec.*, No. 3:18-cv-1108-J-MCR, 2019 WL 4686800, at *8 (M.D. Fla. Sept. 28, 2019).

2. The Clerk is directed to enter final judgment in Plaintiff's favor and close the case.

ORDERED in Tampa, Florida, on March 4, 2022.

SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE